### James A. LEACH, Plaintiff,

v.

### RESOLUTION TRUST CORPORATION and Office of Thrift Supervision, Defendants.

### Civ. No. 94–1033 (CRR).

United States District Court, District of Columbia.

Aug. 18, 1994.

As Amended Sept. 9, 1994.

---

Bobby R. Burchfield and Jackson R. Sharman III of Covington & Burling, Washington, DC, for plaintiff.

Kirk K. Van Tine of Baker & Botts, L.L.P.; Ellen B. Kulka, Gen. Counsel, Andrew E. Tomback, Deputy Gen. Counsel (Litigation), Gregg H.S. Golden, Counsel, and John C. Binkley, Counsel, Resolution Trust Corp., Washington, DC, for defendant Resolution Trust Corp.

Carolyn B. Lieberman, Acting Chief Counsel, Thomas J. Segal, Deputy Chief Counsel, Elizabeth R. Moore, Chief Counsel, and Gary L. Goldberg, Senior Trial Atty., Office of Thrift Supervision, Washington, DC, for defendant Office of Thrift Supervision.

Mark D. Hopson, William K. Kelley, Richard Klinger, and David L. Lawson of Sidley & Austin, Washington, DC, for amici curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The Plaintiff in the above-captioned case is the Honorable James A. Leach, the duly elected Member of the United States House of Representatives from the First Congressional District of Iowa. Acting in his capacity as a Member of Congress and as the Ranking Minority Member of the House Committee on Banking, Finance and Urban Affairs ("the House Banking Committee"), Representative Leach has sought all documents pertaining to the Madison Savings & Loan Association ("Madison") from the Defendants in this suit, the Resolution Trust Corporation ("RTC") and the Office of Thrift Supervision ("OTS").

Now before the Court are the Plaintiff's "Motion for Summary Judgment" and the Defendants' "Motion to Dismiss, or, in the alternative, for Summary Judgment." On July 14, 1994, the Court held a hearing to address the issues raised by the instant Motions. Upon careful consideration of all of the pleadings, the oral arguments of counsel, the applicable law, and the entire record herein, the Court has determined that it would be improvident for the judiciary to enter into this dispute and, pursuant to the doctrine of remedial discretion, the Court shall thus decline to entertain review of the issues presented by the Plaintiff's Motion for Summary Judgment. Accordingly, for the reasons set forth in greater detail below, the Defendants' Motion to Dismiss shall be granted.

## BACKGROUND

The parties do not dispute most of the essential facts in this case. Acting in his capacity as a Member of Congress and as the Ranking Minority Member of the House Banking Committee, Representative Leach has requested that the Defendants produce all documents in their possession, custody, or control pertaining to the Madison Guaranty Savings & Loan Association and its affiliates and subsidiaries. Both Defendants treated this request as one made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and processed Representative Leach's case accordingly.[1]

In responding to the Plaintiff's request, the RTC and the OTS released over 8,000 pages of documents, withholding only those materials deemed exempt from public disclosure under FOIA. *See* Defendants' Motion for Summary Judgment at 2. Representative Leach, however, has challenged this withholding as a matter of law, asserting, *inter alia,* that individual members of Congress are entitled to receive even confidential or otherwise privileged documents pursuant to 5 U.S.C. § 552(d).

Section (d) of the Freedom of Information Act, otherwise known as the "Congressional Savings Clause," explicitly provides that:

> This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. *This section is not authority to withhold information from Congress.*

5 U.S.C. § 552(d) (emphasis added). At the heart of this dispute, then, is the meaning of "Congress" under this section of FOIA and the applicability of the Congressional savings clause to *individual* members of Congress seeking access to documents generally exempt from public disclosure.

The Defendants contend that section 552(d) is inapplicable to this case because, although the Plaintiff has requested these documents in his official capacity as a Member of Congress and as the Ranking Minority Member of the Banking Committee, there is no indication that Representative Leach is acting on behalf of Congress itself, or a duly authorized committee thereof.[2] Indeed, the

---

1. The Defendants do not dispute that Representative Leach has exhausted his administrative remedies in seeking such documents, and the parties are also in agreement that no documents have been withheld on the basis of a claim of executive privilege. *See* Joint Statement of Undisputed and Material Facts at ¶¶ 3–5.

2. The Defendants urge the Court to find that "Representative Leach has not provided any evidence that the House of Representatives, the Committee, or its Chairman, have delegated any oversight or investigative authority to him." *See* Defendants' Motion for Summary Judgment at 9–10. Defendants thus argue that "because Representative Leach does not have the necessary

Defendants argue that there is ample evidence to suggest that Congress—and the Banking Committee in particular—have specifically *not* authorized the Plaintiff's request.

Representative Leach, however, challenges the Defendants' decision to process his request as if he were a private citizen rather than an official member of Congress. The Plaintiff maintains that his request was designed to enable him to perform his legislative oversight responsibilities as the Ranking Minority Member of the House Banking Committee.[3] Representative Leach thus contends that he is authorized by the Congressional savings clause to receive such information despite the fact that it is otherwise exempt from public disclosure.

The legal question squarely presented, then, is what rights of access individual members of Congress possess under FOIA, when acting in an official capacity, but without the authorization of Congress as a whole, or a duly authorized committee thereof. For reasons set forth below, however, the Court shall decline to undertake review of this matter in view of the important separation-of-powers concerns implicated by the specific context in which this case arises.

### DISCUSSION

By now the public is undoubtedly quite familiar with the continuing controversy surrounding the debate over the appropriate nature and scope of congressional hearings pertaining to Madison and related matters. By filing the instant suit, the Plaintiff has asked the Court to interpret the meaning of "Congress" in the Congressional savings clause. Although the Complaint presents a question of statutory interpretation well within the Court's jurisdiction to hear, prudential concerns dictate that this is an appropriate case for the exercise of the Court's remedial discretion to decline review of this suit. Representative Leach's real dispute is with his colleagues in Congress, who are

capable of providing him with substantial, if not complete relief, and the Court is thus reluctant to interfere with what should essentially be an handled as an internal congressional matter.

**I. *The Court cannot accept the Defendants' claim that Representative Leach's dispute must be dismissed as a nonjusticiable political question.***

■ As a preliminary matter, the Court must first briefly address the Defendants' contention that Representative Leach's case should be dismissed as a nonjusticiable political question. Although the Court shares some of the Defendants' concerns that judicial involvement in this matter might potentially embroil the courts in a political dispute best left to a coordinate branch of government, the Court is ultimately unable to conclude that the Plaintiff's Complaint is technically nonjusticiable under the political question doctrine.

Both parties agree that the Court's determination as to whether the instant suit presents a political question must be guided by the Supreme Court's decision in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), in which the Supreme Court explicitly considered the "contours of the 'political question' doctrine." *Id.* at 210, 82 S.Ct. at 706. Providing guidance in the identification of nonjusticiable "political questions," the Supreme Court declared that

each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudi-

Congressional authorization for his demand for confidential and privileged documents exempt from disclosure under FOIA, his claims should be denied." *Id.* at 10.

**3.** "The House Banking Committee has legislative oversight responsibility for the activities of RTC,

OTS, the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and other banking statutes, including the manner in which the Defendants have dealt with the failure of Madison." Joint Statement of Undisputed and Material Facts at ¶ 6.

cial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of respect due co-ordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710.

Further relying on Justice Powell's concurrence in *Goldwater v. Carter,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979), the Defendants urge the Court to consider three issues in deciding whether the Plaintiff's Complaint should be dismissed pursuant to the political question doctrine:

As set forth in the seminal case of *Baker v. Carr* ... the doctrine incorporates three inquiries: (i) Does the issue involve resolution of questions committed by the text of the Constitution to a coordinate branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations counsel against judicial intervention?

*Id.* at 998, 100 S.Ct. at 534. Upon consideration of all three factors, however, the Court cannot accept Defendants' contention that this case should be dismissed as a nonjusticiable political question.

Although the Defendants are correct in asserting that Representative Leach's claims potentially implicate a number of "internal" issues related to the question of how the House will conduct its oversight functions, the question squarely presented by the Complaint is one of statutory interpretation: the meaning of "Congress" as it is used in the Congressional savings clause. As such, the issue is clearly not one committed by the text of the Constitution to a coordinate branch of Government, nor would resolution of this matter demand that the Court move beyond areas of traditional judicial expertise. Indeed, there can be no dispute that the courts

are specifically authorized to undertake judicial review in such cases. Nor can there be any doubt that the judiciary is clearly well within the realm of judicial expertise when asked to review cases brought under FOIA and the APA.

Thus, although quite concerned about the prudential problems raised by the instant suit, the Court is unwilling to hold that Representative Leach's case should be dismissed as nonjusticiable under the political question doctrine. There is no question that the Plaintiff has exhausted his administrative remedies in filing the instant Complaint, and the Court will not dismiss as nonjusticiable a cause of action brought pursuant to a statutorily prescribed right of judicial review.

█ There is no denying that the questions presented by the Complaint arise in the midst of a highly charged political atmosphere; but the mere presence of significant political overtones does not require, nor authorize, dismissal of a suit under the political question doctrine.[4] As the *Baker* Court made clear, the doctrine is "one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." *Baker,* 369 U.S. at 217, 82 S.Ct. at 710. Thus, although courts may be cognizant of the politically charged atmosphere in which a case arises, "under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes, and we cannot shirk this responsibility merely because our decision may have significant political overtones." *See Japan Whaling Association v. American Cetacean Society et al.,* 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L.Ed.2d 166 (1986).

## II. *The Court must decline review of Representative Leach's case pursuant to the Doctrine of Remedial Discretion.*

As the foregoing discussion makes clear, the Court must reject the Defendants' con-

---

4. The Defendants, of course, argue that dismissal is warranted not solely due to the political nature of the dispute but primarily because they claim the Complaint requires the Court to consider a number of threshold matters that present undeniably political questions. Although this may in fact be the case, the Court will not dismiss as nonjusticiable a complaint in which the question squarely presented is properly the subject of judicial review, merely because there is a possibility that related issues might require consideration of more traditional "political questions."

tention that the Plaintiff's Complaint should be dismissed pursuant to the political question doctrine. However, as demonstrated below, the mere fact that a suit is technically justiciable does not mean that it necessarily presents an appropriate situation for the exercise of judicial review.

Precisely for this reason, the D.C.Circuit has developed the doctrine of remedial discretion to permit courts to decline review of technically justiciable suits that implicate important separation-of-powers concerns. The Court finds that the instant suit presents just such a situation and shall thus decline to review the Plaintiff's case. However, before considering the application of the doctrine to the case at bar, it is useful to briefly examine the development of this doctrine in order to clarify its primary goals and objectives.

## The Doctrine of Remedial Discretion: A Brief Overview

The doctrine of remedial discretion [5] was first developed by this Circuit to deal with the unique problems posed by the proliferation of lawsuits initiated by frustrated congressional plaintiffs seeking judicial intervention to remedy perceived problems in the performance of their legislative duties. Although judicial review of many such cases is foreclosed by the political question doctrine or the problem of standing, the D.C. Circuit has specifically developed the doctrine of remedial discretion to permit courts to decline review of even technically justiciable suits in cases such as this where appropriate resolution of the controversy is best left to the legislative branch:

> In reaction to a proliferation of congressional suits in which federal legislators, having failed to achieve their purpose on the floor of the Senate or the House, sue the Executive branch in federal court, the District of Columbia Circuit has developed the novel prudential doctrine of "equitable discretion" which bypasses both standing and justiciability analyses. Under the "equitable discretion" doctrine, a federal court

simply chooses not to hear a case, believing that a proper resolution of the controversy lies through the legislative process.

*Helms v. Secretary of the Treasury,* 721 F.Supp. 1354, 1358 (D.D.C.1989) (Pratt, J.) (footnote omitted).

■ The purpose of this doctrine is clear: to prevent misuse of the courts and to respect the important principles underlying the separation of powers embodied in American constitutional government. Although the political question doctrine and the requirements of ripeness and standing are often sufficient protection for the preservation of the proper separation of powers, courts have often been faced with individual cases in which prudence dictates judicial restraint, notwithstanding a plaintiff's undeniable standing or the technical justiciability of a controversy.

In order to address such situations, the Court of Appeals for the District of Columbia Circuit first established the doctrine of circumscribed equitable discretion in the case of *Riegle v. Federal Open Market Committee,* 656 F.2d 873 (D.C.Cir.1981), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981). Recognizing that the plaintiff's status as a member of Congress raised important separation-of-powers concerns, the Court of Appeals examined the practical problems associated with the prudent exercise of judicial restraint. Concluding that "[n]either the ripeness nor political question doctrine ... is sufficiently catholic in formulation or flexible in application to resolve the prudential issues arising in congressional plaintiff cases," the Court of Appeals declared that the

> most satisfactory means of translating our separation-of-powers concerns into principled decisionmaking is through a doctrine of circumscribed equitable discretion. Where a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, this court should

5. As both parties point out, the term remedial discretion, originally known as "equitable discretion," is more appropriately used in cases such as this in which the Plaintiff seeks both injunctive and declaratory relief. *See Vander Jagt v.*

*O'Neill,* 699 F.2d 1166, 1175 n. 25 (D.C.Cir. 1982), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983). The theory underlying both doctrines, however, is the same, and courts often use the terms interchangeably.

exercise its equitable discretion to dismiss the legislator's action.

*Id.* at 881.

■ Essentially, the doctrine of remedial discretion is designed to afford courts a practical means of avoiding improper interference with the legislative process. As the *Riegle* Court explained, such judicial restraint is most appropriate in cases where a congressional plaintiff's real dispute is primarily with his or her fellow legislators. In counseling courts to refrain from hearing those cases "which represent the most obvious intrusion by the judiciary into the legislative arena: challenges concerning congressional action or inaction regarding legislation," the *Riegle* Court explained that

> it is in these cases that the plaintiff's dispute appears to be primarily with his fellow legislators. In these circumstances, separation-of-powers concerns are most acute. Judges are presented not with a chance to mediate between two political branches but rather with the possibility of thwarting Congress's will by allowing a plaintiff to circumvent the processes of democratic decisionmaking. "This meddling with the internal decisionmaking processes of one of the political branches extends judicial power beyond the limits inherent in the constitutional scheme for dividing federal power."

*See Riegle* at 881 (citations omitted); *see also Moore v. U.S. House of Representatives,* 733 F.2d 946, 956 (D.C.Cir.1984) ("Congressional actions pose a real danger of misuse of the courts by members of Congress whose actual dispute is with their fellow legislators."), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 775 (1985).

In identifying those cases in which a congressional plaintiff's dispute is primarily with his or her fellow legislators, courts are to be guided by an inquiry into whether the congressional plaintiff could be afforded "substantial relief" through the legislative process. Such cases are often characterized as those in which the plaintiff has available the possibility of a "collegial remedy." Courts are thus instructed that "where a congressional plaintiff has standing to challenge the actions of those acting pursuant to a statute

which could be repealed or amended by his colleagues, or where he alleges an injury which could be substantially cured by legislative action, our standard [the doctrine of remedial discretion] would counsel judicial restraint." *Riegle,* 656 F.2d at 881.

Upon consideration of the facts and circumstances presented by the instant case, the Court believes that this is an appropriate situation for the exercise of such judicial restraint. It is clear to the Court that Representative Leach's complaint derives solely from his failure to persuade his colleagues to authorize his request for the documents in question, and that the Plaintiff thus has a clear "collegial remedy" capable of affording him "substantial relief."

### A. The Court finds that Representative Leach's dispute is primarily with his fellow legislators.

■ Although Representative Leach has brought suit against the RTC and the OTS pursuant to FOIA and the APA, alleging improper failure to release the documents in question, the record is clear that his complaint arises solely by virtue of his fellow legislators' refusal to join in his request for these same materials. Throughout this litigation, the Defendants have steadfastly maintained that the documents at issue would unquestionably be released upon request of the entire Congress, a duly authorized committee thereof, or a Committee Chair acting on behalf of such a committee. Thus, although "styled as a dispute between the legislative and executive branches of government, this lawsuit evidences and indeed is a by-product of political disputes within Congress." *See Lowry v. Reagan,* 676 F.Supp. 333, 338 (D.D.C.1987) (Revercomb, J.).

In many ways, the circumstances presented by the case at bar implicate precisely the sort of concerns underlying this Circuit's reliance upon the doctrine of remedial discretion. The strident controversy in the House surrounding the debate over the appropriate format and timetable for hearings pertaining to Madison gave rise to Representative Leach's filing of the instant Complaint. Had Representative Leach's view prevailed as to

the appropriate scope for the Banking Committee oversight hearings, the Committee itself would presumably have requested the materials in question and this controversy would never have reached the courts. In this case, the Court thus concludes that it would indeed be "unwise to permit the federal courts to become a higher legislature where a congressman who has failed to persuade his colleagues can always renew the battle." *See Riegle* at 882. *See also Barnes v. Kline*, 759 F.2d 21, 29 (D.C.Cir.1984) ("In congressional lawsuits against the Executive Branch, a concern for the separation of powers has led this court consistently to dismiss actions by individual congressmen whose real grievance consists of their having failed to persuade their fellow legislators of their point of view, and who seek the court's aid in overturning the results of the legislative process." (citations omitted)), *vacated as moot due to expiration of challenged act sub nom. Burke v. Barnes*, 479 U.S. 361, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987).[6]

Nor is the Court persuaded by the Plaintiff's attempts to rebut the notion that his dispute is actually with his colleagues in Congress. Representative Leach argues that the relief requested implicates only the Defendant agencies, and thus urges the Court to find that a judicial ruling on this issue need not affect any other members of Congress at all. The Court, however, cannot accept the Plaintiff's contention that a judicial ruling will not interfere with the activities of Congress. Given the legal issue presented by this case, the Court finds the Plaintiff's interpretation to be a narrow, somewhat strained, and perhaps overly formalistic characterization of this dispute.

The question Representative Leach has asked the Court to consider is the proper interpretation of "Congress" as it is used in the Congressional savings clause. In the instant case, a judicial determination as to whether the Plaintiff's request should be treated as one from "Congress" might very

well require the Court to look into various House rules and resolutions pertaining to this and other issues. As such, the Court is "reluctant to meddle in the internal affairs of the legislative branch, and the doctrine of remedial discretion properly permits us to consider the prudential, separation-of-powers concerns...." *Moore*, 733 F.2d at 956.

B. The Court further finds that Representative Leach has available a clear "collegial remedy" capable of affording him more than "substantial relief" in the instant case.

In view of the foregoing, the Court thus agrees with the Defendants that this is an appropriate case for the "exercise [of] its equitable discretion to leave the matter to be resolved internally by Representative Leach and his fellow Legislators." *See* Defendants' Motion for Summary Judgment at 3. In making this determination, the Court has carefully considered the availability of a "collegial remedy" and finds that Representative Leach has more than ample alternatives from which to derive "substantial relief" for his instant concerns.

There is no question that there are a number of simple "collegial remedies" available to Representative Leach. He is undeniably free to attempt to persuade the entire Congress, the House leadership, the Chairman of the Banking Committee, or the Committee as a whole to authorize his request for the documents—as the Defendants have never questioned the right of Congress, or a duly authorized committee thereof, to receive and review these materials pursuant to the Congressional savings clause. Indeed, the record indicates that the Plaintiff has already endeavored to pursue many of these alternative means of receiving this information.

The Plaintiff, of course, urges the Court to reject the viability of these alternatives as it is precisely the alleged refusal of his colleagues in the House to investigate this mat-

---

**6.** In *Barnes*, of course, the Court of Appeals rejected application of the doctrine of remedial discretion, finding that there "could be no clearer instance of 'a constitutional impasse' between the Executive and the Legislative Branches" than the controversy presented in that case: a dispute

regarding the President's attempted pocket veto of certain legislation. Unlike the instant case, however, *Barnes* did not arise out of, nor present, an intra-congressional fight manifest through congressional relations with members of the executive branch.

ter that drove Representative Leach to the courts in the first place. However, the likelihood that Representative Leach will prevail among his colleagues should not influence the Court's assessment of whether or not such a "collegial remedy" does in fact exist. "Whatever the practical difficulties and political realities ... [the Plaintiff here has] readily at hand ... an 'in-house' remedy within the meaning of this court's decision in *Riegle v. Federal Open Market Committee....*" See *Humphrey v. Baker,* 848 F.2d 211, 214 (D.C.Cir.1988), *cert. denied,* 488 U.S. 966, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988).[7]

More importantly, though, the record in the instant case reveals that the Plaintiff's "in-house" remedy is far more viable than Representative Leach would have the Court believe. The Banking Committee's decision to commence hearings pertaining to Madison has already provided the Plaintiff with at least some of the relief that he seeks. Indeed, the Defendants have indicated that a number of the documents the Plaintiff has requested have either been, or will shortly be, released to the Committee, and that the Plaintiff shall thus have access to this information. *See* Defendants' Supplemental Brief Regarding Recent Developments.

Defendants further contend that they anticipate that most, if not all, of the documents at issue will eventually be requested by the Committee as the scope and coverage of the congressional hearings expand. As a result, these documents as well would eventually be released to the Plaintiff, thereby rendering moot all remaining issues in this case.[8] It is

thus undeniably clear that Representative Leach has at least the potential, if not a strong probability, of achieving not only "substantial" but most likely *complete* relief by means of these alternative "collegial" remedies.

### C. The Court thus concludes that prudential concerns clearly weigh in favor of judicial abstention given the facts and circumstances presented by this case

As the foregoing discussion demonstrates, the specific circumstances presented by this case render it an appropriate situation for the exercise of the Court's remedial discretion to decline review of this matter. Representative Leach's real dispute appears to be primarily with his fellow legislators and he has available a number of formal and informal "in-house" remedies through which to directly seek production of the documents in question. Moreover, the record indicates that such alternative remedies have already afforded the Plaintiff at least some relief, and there is reason to expect continued progress with regard to the remaining documents as Congress proceeds with additional phases of the Madison Hearings.[9] Consequently, the Court is extremely hesitant to interfere with the legislative process and believes that the exercise of its remedial discretion to decline review of the Complaint is the appropriate method of coping with the important separation-of-powers concerns implicated by this suit.

---

**7.** Moreover, to the extent that Representative Leach seeks to suggest that the alleged domination of the Committee by members of an opposing political party makes such a collegial remedy an impossibility, the Defendants note that the House has in fact provided alternative procedures through which small groups of individual congressmembers can request information without awaiting formal Committee action. *See* 5 U.S.C. § 2954 ("An Executive agency, on request of the Committee on Government Operations of the House of Representatives, or of any seven members thereof ... shall submit any information requested of it relating to any matter within the jurisdiction of the committee.").

**8.** The Court notes that the Plaintiff has questioned the likelihood of this development and

further asserts a more immediate need for this information than such a remedy would provide. The relevant question, however, is not whether a plaintiff can obtain complete, and perhaps immediate, relief, but rather whether such alternative channels offer the possibility of "substantial" relief. Given the facts and circumstances presented by the case at bar, the Court must conclude that the potential for release of this information, over time, pursuant to the scheduling of congressional hearings, is more than sufficient to constitute "substantial relief."

**9.** The Court should also note that, although not dispositive, the pendency of related criminal proceedings adds substantial support to the prudential concerns weighing against judicial intervention in the instant case.

In making this determination, the Court is mindful of the dangers inherent in overstating this doctrine. *See Gregg v. Barrett,* 771 F.2d 539, 543 (D.C.Cir.1985). Nevertheless, the Court is of the opinion that the instant suit represents yet another in a long line of recent cases in which "individual members of Congress seek to vent their frustration with their colleagues, or with the executive branch, or both, by appeals to the courts." *Id.* Although Representative Leach argues quite strenuously that the doctrine of remedial discretion should not be applied in this case because he has a clear statutory right to judicial review, a brief examination of the legal question actually presented reveals that judicial abstention is neither inappropriate nor an improper abdication of the judicial responsibility to undertake statutory review.

Although it is true that the doctrine of remedial discretion is not generally applied in cases in which a Plaintiff seeks to exercise a statutory right to judicial review, the particular issue presented by this case is one best left to the discretion of the legislative branch. In asking the judiciary to rule upon the proper interpretation of "Congress" pursuant to the Congressional savings clause, the Plaintiff has asked the Court to enter into a theoretical debate over whether individual members of Congress are entitled to the same rights of access the legislative branch preserved for itself in passing FOIA. Congress both drafted and enacted the statute, specifically providing that such information not be withheld from "Congress." The Court therefore finds that the question of who constitutes "Congress" for this purpose is largely a matter of self-definition that should best be determined by the legislature itself.

In addressing this issue, the Court notes that the Plaintiff has argued very persuasively that the use of the word "Congress" in the Congressional savings clause must mean something—and that Representative Leach has a statutory right to seek adjudication of this issue in court. However, although such questions of statutory interpretation are undeniably within the traditional province of the judiciary, the Court finds that, due to the particular nature of the question posed, the

Court need not, and should not, decide this issue on the facts presented by the case at bar.

Essentially, Representative Leach has asked the Court to rule upon whether individual members of Congress fall within the meaning of "Congress" as used by the legislative branch in this section of FOIA. The consequences of any such determination would most likely be limited to Congress itself, as this provision affects the rights of no other parties. The Court therefore believes that Congress itself should make the determination as to whether individual members also possess the additional rights of access guaranteed to Congress by the Congressional savings clause.

Indeed, the Court finds it "a 'startlingly unattractive' idea, given our respect for a coequal branch of government" for the judiciary to rule upon this issue—as it would require examination of the legislature's own intent in specifically granting these rights of access to "Congress." *See Vander Jagt v. O'Neill,* 699 F.2d 1166, 1176 (D.C.Cir.1982), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983). As with all questions of statutory interpretation, the debate over this issue began in the legislature. In this instance, however, given the particular nature of the question presented, the Court believes that the debate should end in the legislature as well.

Lest there be any misunderstanding, though, it is important to emphasize that the Court's decision in this respect is a very narrow one. In concluding that the judiciary should refrain from deciding a matter that deals only with the appropriate meaning and application of this statutory provision vis a vis Congress, the Court does not in any way suggest that the Congressional savings clause is *per se* immune from judicial review. Although the Court believes that the question of whether individual members should be covered by the Congressional savings clause is a matter best left to the discretion of the legislative branch, it is not difficult to conceive of a situation in which the judiciary would properly be called upon to adjudicate a

matter pursuant to this section of FOIA.[10] In the instant case, however, because a determination as to the legal issue presented would have only "intra-congressional" consequences, the Court deems it appropriate to decline review of this dispute.[11]

For this same reason, the Court must also emphasize that Representative Leach has available an additional "collegial remedy" not yet discussed: the ability to propose an amendment to FOIA, clarifying Congress' intent with respect to the scope of the Congressional savings clause and the rights of individual members of Congress thereunder. As neither the instant dispute, nor the general legal question presented, is a matter that affects the rights of any other party under FOIA, the Court believes that it is entirely appropriate to leave the resolution of this matter to Congress itself. Fortunately, the doctrine of remedial discretion permits the Court to do just that. *See Moore v. U.S. House of Representatives*, 733 F.2d 946, 954 (D.C.Cir.1984) (noting that the doctrine of remedial discretion "permits the court to exercise judicial self-restraint in particular matters intruding upon a coordinate branch of government"), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 775 (1985).

## III. *The Doctrine of Remedial Discretion is still the law of this Circuit, and the Court believes that it would be an abuse of discretion to entertain the Plaintiff's suit.*

Although the Plaintiff urges the Court to refrain from invoking the doctrine of remedi-

al discretion by questioning its continuing validity, it is clear that the doctrine first set forth in *Riegle* is still the law in this Circuit. *See Gregg v. Barrett*, 771 F.2d 539, 544 (D.C.Cir.1985) ("Since Riegle, the court has firmly established the doctrine of remedial discretion as the preferred method for coping with separation-of-powers concerns in suits by congressional plaintiffs where the ill in question could clearly be rectified by congressional action.").

Indeed, in cases such as this where Representative Leach can "obtain substantial relief from his fellow legislators through the legislative process itself," it would be "an abuse of discretion for a court to entertain the legislator's action." *Melcher v. Federal Open Market Committee*, 836 F.2d 561, 565 (D.C.Cir. 1987), *cert. denied*, 486 U.S. 1042, 108 S.Ct. 2034, 100 L.Ed.2d 619 (1988). *See also Humphrey v. Baker*, 848 F.2d 211, 214–215 (D.C.Cir.1988) ("Under the doctrine of equitable discretion, the availability of an internally available remedy to Members of Congress means that it would be an abuse of discretion for the judiciary to entertain the action."), *cert. denied*, 488 U.S. 966, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988).[12]

Finally, the Court also notes that the Plaintiff's challenge to the validity of the doctrine of remedial discretion is especially misplaced given his substantial reliance upon the cases of *Murphy v. Department of the Army*, 613 F.2d 1151 (D.C.Cir.1979) and *FTC v. Owens–Corning Fiberglas Corp.*, 626 F.2d

---

**10.** For example, in a suit in which the executive branch, or some other party, were to challenge the rights of Congress as an institution under the Congressional savings clause, it would, of course, be entirely appropriate for a court to undertake judicial review of the meaning and application of this section of FOIA.

**11.** Nor, of course, does the Court in any way suggest that the use of the term "Congress" in a statute somehow insulates the legislative branch from judicial review. In this particular instance, however, there are likely to be only limited, "intra-congressional" consequences to a judicial determination as to this matter, further counseling against the exercise of judicial review. The Court cannot, and does not, presume to suggest that this will always be the case in such situations. The Court's decision to invoke the doc-

trine of remedial discretion is premised upon a careful consideration of the unique facts and circumstances presented by the case at bar. The proper application of this doctrine in other instances is not before this Court and is a matter that should best be addressed by other courts on an individual, case-by-case basis.

**12.** It is true, as the Plaintiff points out, that the *Humphrey* Court expressed some reservations about the doctrine of equitable discretion, but the *Humphrey* Court's undeniable conclusion leaves no doubt as to the continuing status of the doctrine as the law of this Circuit. *See Humphrey*, 848 F.2d at 214–215 ("As a panel, however, we are of course bound faithfully to follow and apply the law of our circuit. We therefore conclude that the District Court was obliged to dismiss this suit under the doctrine of equitable discretion.").

966 (D.C.Cir.1980), both of which were decided *prior* to the emergence of the doctrine of remedial discretion in 1981, and certainly prior to its growth and development over the past decade.[13]

### IV. There is no merit to the Plaintiff's contention that application of the doctrine of remedial discretion would "deprive members of Congress of a right to judicial review available by statute to all other citizens."

Lastly, it is important to clarify one final point. The Plaintiff has argued that the Defendants' allegedly "expansive" reading of the political question and equitable discretion doctrines would deprive Representative Leach of his statutory right to judicial review—a right guaranteed to all citizens—merely because he is a Member of Congress. This is not, however, the case.

Both the Complaint and the Plaintiff's Motion for Summary Judgment make clear that Representative Leach has filed the instant suit in his capacity as a Member of Congress and as the Ranking Minority Member of the House Banking Committee. The legal question presented is unquestionably a function of his official status, and it is equally clear that the relief he seeks is that to which he claims he is entitled by virtue of his official position and pursuant to his reading of the Congressional savings clause. It is only in response to these claims, then, that the Court invokes its remedial discretion to decline review of the Plaintiff's suit.

There is no question that, when acting as a private citizen, Representative Leach possesses the same rights as all other members of the public to seek access to the documents in question, and nothing in this Opinion should be construed to the contrary. The instant Complaint, however, does not suggest that these materials have been improperly withheld from public disclosure. Rather, the Plaintiff alleges that *as a Member of Congress* he has been improperly denied access to these documents. As demonstrated above, the Court finds the Plaintiff's claim that he has a right to review these materials pursuant to the Congressional savings clause to be an "intra-congressional" dispute into which the judiciary should decline to intervene.

The question of whether these materials are properly exempt from *public* disclosure, however, is a separate matter not currently before the Court, and as to which Representative Leach has the same right as any other citizen to seek judicial review. No similar separation-of-powers concerns would be implicated if the Plaintiff were to challenge the Defendants' withholding decisions as a member of the general public, rather than as a Member of Congress allegedly entitled to greater statutory rights of access. As such, the Court sees no need for the Plaintiff's concern that application of the doctrine of remedial discretion would improperly deprive him of his statutory rights as a citizen merely because he is also a Member of Congress.

Nevertheless, in order to ensure that Representative Leach's rights are fully and fairly protected, the Court shall dismiss his Complaint, but shall do so without prejudice to any claims he may wish to assert acting in his individual rather than his official capacity. Thus, as a private citizen, Representative Leach remains free to seek access to these documents should he so choose.[14]

13. Without addressing the merits of this case, the Court should further note that the Plaintiff's references to *Murphy* are mere dicta. Thus, although the Plaintiff can point to fairly persuasive language in support of his position, the fact that the courts to which he cites were not squarely presented with this issue, and the fact that the doctrine of remedial discretion had not yet been developed at the time these cases were decided, combine to make Representative Leach's suggestion that it is inappropriate for the Court to decline review of this suit even more difficult to accept.

14. In his motion papers, Representative Leach makes passing reference to his intention to seek production of a *Vaughn* index should his claim for judgment as a matter of law be denied. However, the Court has carefully reviewed the Complaint and concluded that all of the claims therein are inextricably linked to the central issue posed by this suit: Representative Leach's rights of access to this material as a Member of Congress. As such, the Court's threshold determination that the doctrine of remedial discretion counsels against the exercise of judicial review requires dismissal of the Complaint in its entirety. Should Representative Leach choose to pur-

## CONCLUSION

Upon consideration of the parties' cross-motions for judgment, the oral arguments of counsel at the July 14, 1994 hearing, the applicable law, the entire record in this case, and for all of the reasons articulated herein, the Court has determined that, although Representative Leach's Complaint is not subject to dismissal pursuant to the political question doctrine, the Court must exercise its remedial discretion to decline review of this case.

Representative Leach's dispute is primarily with his fellow legislators and he has available a number of viable "collegial remedies" through which to obtain access to the documents he seeks. Moreover, to the extent that the Plaintiff seeks a judicial determination regarding the proper interpretation and application of the Congressional savings clause, the Court believes that resolution of this matter is best left to the legislative branch, and that prudential concerns weigh heavily in favor of judicial abstention.

Accordingly, pursuant to the doctrine of remedial discretion, the Plaintiff's Complaint shall be dismissed, without prejudice to Representative Leach's right to assert any claims he might have as a member of the public with regard to the issues raised herein. The Court shall thus issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

Upon consideration of the parties' cross-motions for judgment, the applicable law, the oral arguments of counsel, the entire record herein, and for all of the reasons articulated in this Court's Memorandum Opinion issued of even date herewith, the Court has determined that the doctrine of remedial discretion counsels against judicial review of the instant dispute.

Accordingly, it is, by the Court, this 18th day of August, 1994,

ORDERED that the above-captioned case shall be, and hereby is, DISMISSED, without prejudice to the right of the Plaintiff to assert any claims he may wish to pursue in his individual capacity as a member of the general public; and it is

FURTHER ORDERED that any and all other pending motions are hereby rendered and declared MOOT.

---

sue this matter in his individual capacity, however, the Defendants would of course be required to submit a *Vaughn* index and justify their withholding decisions as in any other such case. However, given the on-going developments in Congress, and the fact that the Plaintiff has not

as of yet challenged the Defendants' claim that such materials are exempt from public disclosure, the Court expects that Representative Leach may be able to obtain the relief he seeks from his colleagues in Congress without the need for further resort to the courts.